**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARY CORNER,<br><br>    **Plaintiff,**<br><br>  v.<br><br>HILDA SOLIS, Secretary of Labor,<br><br>    **Defendant.** | Case No. 11 C 8652<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment. For the reasons stated herein, the Motion for Summary Judgment is granted in part and the matter is remanded in part to the Department of Labor for a supplemental statement of reasons.

**I. BACKGROUND**

Plaintiff Mary Corner seeks administrative review of the Secretary of Labor's decision not to challenge the April 2011 election for Northwest Illinois Area Local 7140, American Postal Workers Union, AFL-CIO ("NWIAL" or "Local"). Plaintiff has already filed one suit challenging the election results, which was dismissed for lack of jurisdiction. Judge Gary S. Feinerman's opinion well summarizes the underlying facts. *See Corner v. Engelhart,* 11 C 5183, 2011 WL 4688723 (N.D. Ill.

Oct. 4, 2011) (hereinafter, "*Corner III*"). Briefly, however, Plaintiff lost the race for NWIAL President. She filed a protest claiming that three winning incumbent candidates — Jackie Engelhart (President), David Baskin (Vice President), and Linda Retel (Secretary) — were ineligible to run because each had failed to pay their dues in the year before the election, and therefore had not been in good standing for 12 months as required by the NWIAL Constitution. Plaintiff bases her claim on the fact that the "dues check-off lists" — which reflect whether a member's dues were withheld from her U.S. Postal Service ("USPS") paycheck in a given pay period, and then paid directly to the union — show that each incumbent failed to pay his or her dues through the check-off withholding system at least once in the year before the election.

NWIAL has an Election Committee (of three members and one alternate) which handles election protests. On May 5, 2011, two committee members and the alternate rejected Plaintiff's election challenge on behalf of the Committee. Plaintiff appealed to the National Election Appeals Committee (the "NEAC"). Shortly before the NEAC rejected all of Plaintiff's claims, Maria Porch-Clark ("Porch-Clark"), the Committee chairperson, purported to remove the three incumbents from office and install Plaintiff as President. She had not joined the prior Committee ruling, and

noted in her letters that she acted alone in ousting the incumbents.

After the NEAC rejected her claims, Plaintiff appealed the decision to the Department of Labor (the "Department"). The Department investigated and found that the lists reflected dues that the USPS withheld from its employees' pay, but not whether members paid their dues by any other method (as allowed by the Local's rules). As described in greater detail below, the Secretary found that the incumbents were eligible to run. On December 28, 2011, the Department sent Plaintiff a statement of reasons explaining the denial.

Defendant has moved to dismiss the Complaint, or, in the alternative, for summary judgment. Plaintiff filed a "Motion to Denied *[sic]* Defendants *[sic]* Motion to Dismiss or, in the Alternative, for Summary Judgment." It appears that this was intended to be a response to Defendant's Motion, not Plaintiff's own Motion for summary judgment.

## II. <u>LEGAL STANDARD</u>

### A. Motion to Dismiss

On a Motion to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the Complaint and draws all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A

complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). It "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

### B. Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant meets its burden, the non-movant must present facts showing a genuine dispute to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Courts construe the facts in the non-movant's favor, but where the record as a whole "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009) (citation omitted).

### III. DISCUSSION

Before proceeding to the merits, the Court must decide what evidence to consider. In a motion to dismiss under Rule 12(b)(6), consideration is generally limited to the complaint and documents attached to it. If a party presents extraneous matter which the court does not strike, the court must deem the motion

one for summary judgment and give the other side a chance to respond in kind. FED. R. CIV. P. 12(d). However, if the motion is labeled as one alternatively seeking summary judgment, that sufficiently notifies the opposing party. *Miller v. Herman,* 600 F.3d 726, 733 (7th Cir. 2010). Here, Plaintiff clearly responded to this motion, in part, as one for summary judgment. However, many of the documents are unnecessary. As discussed below, review in this case is largely limited to the face of the Secretary's Statement of Reasons. *See Corner v. Solis,* 380 Fed.Appx. 532, 535 (7th Cir. 2010) (hereinafter, "*Corner II*").

### A. Motion to Strike

Plaintiff seeks to strike as irrelevant any reference to her previous suit challenging this election. Plaintiff filed that suit before she filed her appeal with the Department, so it does not dispose of this APA review action. Nonetheless, as part of the narrative of this dispute, that case and opinion are relevant and subject to judicial notice (though not for the truth of the matter asserted). *See General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997). Accordingly, Plaintiff's Motion to Strike is denied.

### B. Motion for Summary Judgment

Candidate eligibility challenges in union elections fall under Title IV of the Labor-Management Reporting and Disclosure

Act ("Title IV" of the "LMRDA," 29 U.S.C. §§ 481 *et seq.*), and must be resolved through the procedure set out in that section. *Denov v. Chicago Fed'n of Musicians, Local 10-208*, 703 F.2d 1034, 1037 (7th Cir. 1983). A member with an election grievance must exhaust her union's remedies, and may then appeal to the Department of Labor. *See Chao v. Local 473, Int'l Bhd. of Teamsters,* 467 F.3d 1014, 1017 (7th Cir. 2006). Next, the Secretary of Labor investigates the complaint; if she finds probable cause to believe that a Title IV violation occurred which may have affected the election's outcome, she is to file suit to set aside that election. *See id.;* 29 U.S.C. § 482(b).
Act ("Title IV" of the "LMRDA," 29 U.S.C. §§ 481 *et seq.*), and must be resolved through the procedure set out in that section. *Denov v. Chicago Fed'n of Musicians, Local 10-208*, 703 F.2d 1034, 1037 (7th Cir. 1983). A member with an election grievance must exhaust her union's remedies, and may then appeal to the Department of Labor. *See Chao v. Local 473, Int'l Bhd. of Teamsters,* 467 F.3d 1014, 1017 (7th Cir. 2006). Next, the Secretary of Labor investigates the complaint; if she finds probable cause to believe that a Title IV violation occurred which may have affected the election's outcome, she is to file suit to set aside that election. *See id.;* 29 U.S.C. § 482(b).

Plaintiff exhausted her union remedies and properly appealed to the Secretary. However, the Secretary found no probable cause to believe that a violation had occurred, and issued a Statement of Reasons explaining her findings. That Statement of Reasons is subject to review under the Administrative Procedures Act ("APA," 5 U.S.C. § 500 *et seq.*). *See Dunlop v. Bachowski*, 421 U.S. 560, 564-65 (1975) *overruled in unrelated part by Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 550 n. 22 (1984). Such review, however, is exceedingly narrow. Except in the rare cases not presented by the allegations here, courts are to determine only whether the statement of reasons, on its face,

is so irrational as to be arbitrary, capricious, or contrary to law. *Corner v. United States Dep't of Labor*, 219 Fed.Appx. 492, 493-94 (7th Cir. 2007) (hereinafter, "*Corner I*"). That is, unless the statement of reasons is facially arbitrary and capricious, the factual findings of the Secretary are outside the scope of judicial review. *Corner II,* 380 Fed.Appx. at 535.

Plaintiff makes three discernible objections to the Secretary's decision and statement of reasons. First, she argues that the Secretary should have closed Corner's Complaint as moot because Porch-Clark had already ousted the ineligible candidates. Second, though she speaks of the Secretary illegally *changing* the law and rules, Plaintiff appears to argue that the Secretary applied the wrong law in finding the incumbents eligible. Finally, she argues that the Secretary's judgments were factually faulty. The Court considers each allegation below.

### *1. Mootness*

Plaintiff appears to argue both that (a) her appeal was moot from the beginning because Porch-Clark had already removed the three incumbents from office, and (b) once the investigator learned of Porch-Clark's actions, the investigation should have ended (presumably, by validating those actions). Essentially, Plaintiff argues that once she challenged the incumbents' qualifications, the Secretary's responsibility was "to see if the

violation had been remedied." Am. Compl. 4. She misunderstands the statutory requirements. The Secretary's job was not solely to determine whether the alleged violation of the eligibility rules had been remedied, but also to determine whether it had occurred at all. *See* 29 U.S.C. § 482.

If Porch-Clark's actions had mooted Plaintiff's Complaint from the beginning, she had no need to file it. Plaintiff's decision to do so reflects the reality that Porch-Clark's action had not been recognized as valid by any union authority (or, for that matter, Judge Feinerman. *See Corner III,* 2011 WL 4688723, at *3).

As for her claim that the investigation should have ended when the investigator learned of Porch-Clark's actions, Plaintiff offers no authority for the proposition that Porch-Clark's unilateral action deprived the Secretary of jurisdiction to investigate. Although the Secretary may not sue to challenge a union election unless her investigation confirms "that a statutory violation probably affected the outcome of the election and has not been remedied already[,]" *Corner II*, 380 Fed.Appx. at 535, that does not mean that any allegedly remedial act, authorized or not, deprives her of jurisdiction.

Furthermore, though Plaintiff argues (without supporting evidence) that the Committee habitually acted through the chairperson alone, she proffers no authority under which the

- 8 -

chairperson could overrule the prior ruling of the committee majority. (She concedes that the ruling came from at least two genuine committee members. *Id.*) *Cf. Constitution of the Nw. Ill. Area Local, Am. Postal Workers Union, AFL-CIO*, art. 10, sec. 2 (the "NWIAL Constitution"), *available at http://www.nwial.com/ PDF%20 files/NWIAL%20Constitution%2002-13-2011.pdf.*

Plaintiff did not properly exhaust her claim that Porch-Clark properly ousted the incumbents by presenting it to the Secretary, and has not created a genuine issue as to Porch-Clark's authority to do so. Having sought an investigation, Plaintiff can hardly complain that the Secretary fulfilled her statutory obligation to conduct one, rather than accept the say-so of a chairperson admittedly acting against the majority. Accordingly, the Secretary is entitled to summary judgment on this claim.

### *2. Engelhart's Eligibility*

29 U.S.C. § 481(e) makes every union member in good standing eligible to hold union office, subject to, *inter alia*, "reasonable qualifications uniformly imposed." "Member in good standing" includes anyone who has fulfilled the membership requirements, and has neither withdrawn nor "been expelled or suspended from membership after appropriate proceedings consistent with . . . the Constitution and bylaws of [that

- 9 -

union]." 29 U.S.C. § 402. A rule predicating good standing on prompt dues payment is only "reasonable" if "(1) it provides a reasonable grace period during which members may make up missed payments without loss of eligibility for office, and (2) the period of time involved is reasonable." 29 C.F.R. § 452.37(b). The NWIAL Constitution creates a progressive discipline system for late payments, which require warnings and notice before membership is suspended. *NWIAL Const. art. 14, sec. 2 (b, c, d)*. The Secretary found that the Local was reasonable to require candidates to be current in dues when nominated.

The Secretary's decision that Engelhart was eligible was not arbitrary or capricious. The Statement of Reasons makes clear that this claim was investigated. The investigator found that while Engelhart's payments were not reflected on the Dues Check-Off List, this is because she was employed by the NWIAL, not USPS. It found that Engelhart unfailingly paid her dues a different way, as permitted by the NWIAL Constitution. *See NWIAL Const. art. 14, sec. 2(b)*.

Plaintiff's continued insistence that being listed on the Dues Check-Off List is the only way to be eligible for election appears to be based on her belief that the NWIAL Constitution incorporates by reference the Election Committee Rules and Procedure manual. That manual states that whether a candidate has been a member for one year "can be determined by reviewing the

- 10 -

dues check-off lists for the past year." Am. Compl. Ex. E. The Department would be reasonable to find that the manual is a semi-formal guidance document which neither could nor did supplant the NWIAL constitutional provision which permits dues to be paid by means other than the check-off list. The NWIAL Constitution merely states that the Election Committee *may* refer to the manual. *See NWIAL Const. art. 11 sec. 6; Corner II,* 380 Fed.Appx. at 536 (noting that the Election Committee Rules and Procedures manual "is not part of the [NWIAL] Constitution."). Accordingly, the Secretary did not rewrite the NWIAL Constitution in concluding that Engelhart was eligible to run for union office, and she is entitled to summary judgment on this claim.

### 3. *Baskin's Eligibility*

Similarly, the Secretary's finding on Baskin's eligibility was not arbitrary or capricious. The investigation found that Baskin had no dues withheld in Pay Period 20, but that he made up the delinquency in Period 24. Plaintiff argues that the Secretary was wrong, pointing to the check-off list for pay Period 24 (which shows only one entry for Baskin). Am. Compl. Ex. E. This Court accepts the factual findings of the Secretary, *Corner II,* 380 Fed.Appx. at 535, and in any event, Plaintiff has given the Court no basis for finding that a second payment in Pay Period 24 would have appeared on the check-off list. Having

investigated and reasonably rejected Plaintiff's claim, the Secretary is entitled to summary judgment.

### 4. *Retel's Eligibility*

Linda Retel's eligibility is a more complicated question. In the investigation, the Secretary concluded that Retel did not pay her dues from April 2010 through early 2011. Retel, along with some 80 other employees, had been involuntarily terminated and placed on workers' compensation. The investigation concluded that when Retel was told that she should pay her dues in cash to remain in good standing, she authorized the Local to deduct her unpaid dues from her union paychecks. Those back dues were deducted from her paychecks in January and February 2011. The investigation also concluded that the APWU has since determined that members on workers' compensation need not pay dues to remain in good standing; therefore, Retel remained in good standing.

Plaintiff attacks this conclusion, stating, for example, that individuals on workers' compensation don't get fired, and that her printout from the APWU website proves that people receiving workers' compensation funds must pay dues to remain in good standing. Am. Compl. 5-6 and Ex. I. Again, however, this Court must not retry the Secretary's factual findings. *See Corner II,* 380 Fed.Appx. at 535. Incidentally, the Secretary's conclusion about the dues policy for members on workers' compensation is supported by the APWU's recent constitutional

- 12 -

rewrite on that very point. *See Const. of Am. Postal Workers Union, AFL-CIO, art. 3, sec. 1,* available at *http://www.apwu.org/dept/sec-treas/ stconstitution2010.pdf. See also* American Postal Workers Union, *National Executive Board Removes Provision in Conflict with Law, http://www.apwu.org/dept/sec-treas/stconstitution.htm* (last visited May 10, 2012).

Thus, the Secretary's conclusion that Retel's 2010 lapse in dues did not render her ineligible is not arbitrary or capricious, and the Secretary is entitled to summary judgment. (Plaintiff also challenges this finding based on § 481(e) and its regulations, but as discussed below, those provisions do not apply to Retel.)

There is an additional issue with Retel's dues, however. The Secretary determined that shortly before the March nomination meeting, the Local neglected to withhold Retel's monthly dues payments from her paycheck, making her delinquent when she was nominated. Even so, the investigator concluded that "[t]he Local's failure to deduct the dues after being authorized to do so should not be used to destroy Retel's good standing. *See, generally* 29 U.S.C. § 481(e)." Statement of Reasons, at 2.

Under § 481(e), if a member authorizes her employer to withhold her dues under a collective bargaining agreement, the employer's delay or failure to pay those dues to the union will

- 13 -

not make the member ineligible for office. *Id.* If the employee has no earnings from which the dues could be deducted, however, § 481(e) does not obviate the need to pay dues to remain in good standing. 29 C.F.R. § 452.37(b).

Plaintiff objects that Retel did not work for the NWIAL under a collective bargaining agreement, and so § 481(e) does not protect her. Indeed, the "*see, generally*" citation seems to be a concession that the Secretary was applying the policy behind the statute, even though the statute did not directly apply. That is hardly an irrational exercise of discretion. However, if the Secretary believed that there was probable cause to believe (a) that a violation occurred (b) which may have affected the election, but declined to act based on the policy behind an inapplicable statutory provision, her decision was contrary to law in that it exceeded her statutory discretion. *See Harrington v. Chao*, 372 F.3d 52, 55 (1st Cir. 2004) (after finding probable cause, the Secretary must sue); *Ellis v. Chao*, 336 F.3d 114, 120, 122 (2d Cir. 2003)(same). (It is not clear, however, whether Retel was still on workers' compensation and immune from dues obligations.) Accordingly, this matter will be remanded back to the agency for a supplemental statement of reasons, limited to Retel's unpaid dues from January 28 through March 2011.

Of course, the Secretary is not bound to find that Retel was in poor standing. As noted, for example, the NWIAL Constitution

features a progressive discipline system for late payments, which requires warnings from the union before adverse action is taken. *NWIAL Const. art. 14, sec. 2 (b, c, d)*. See also 29 C.F.R. § 452.37(b). Whether Retel was in good standing, and whether any violation may have affected the election, is a question for the Secretary on remand, not this Court. *See Dunlop*, 421 U.S. at 572-73.

## IV. CONCLUSION

Accordingly, the Court remands the issue of Retel's missed dues payment in early 2011 to the Department for a supplemental statement of reasons. The Secretary's Motion for Summary Judgment is granted as to all of Plaintiff's other claims.

**IT IS SO ORDERED.**

                                         Harry D. Leinenweber, Judge
                                         United States District Court

**DATE:** 6/1/2012